**UNITED STATES of America**

v.

**Billie Sol ESTES and Patsy D. Estes.**

**No. CA 1–76–19.**

United States District Court,
N. D. Texas,
Abilene Division.

Feb. 7, 1978.

John J. McCarthy, Jr., Tax Div., Dept. of Justice, Washington, D. C., Claude D. Brown, Asst. U. S. Atty., Fort Worth, Tex., for the Government.

Jack Bryant, Abilene, Tex., for defendants.

## OPINION ON MOTIONS FOR SUMMARY JUDGMENT

BREWSTER, District Judge.

The United States of America (Government) brought separate suits against Billie Sol Estes and wife, Patsy D. Estes, seeking a personal judgment against each of them for amounts they owed it as a result of assessments for certain income taxes, penalties and interest for the years 1959, 1960, 1961 and 1962, plus accrued interest as provided by law. Those suits were consolidated into this one action by agreement of all parties. By its amended pleadings, the Government predicated its suit upon (1) the liabilities under the respective tax assessments, and (2) the debts created by the existing final judgments of the Bankruptcy Court in the Billie Sol Estes proceeding and the Tax Court in the Patsy D. Estes case. The matter is now before the Court on separate motions for summary judgment filed by each of the parties before the consolidation.

It is agreed that there is no genuine issue as to any material fact, and that the case should be disposed of by summary judgment.[1]

---

1. Paragraph III, of the Pre-trial Order, agreed to by all parties and approved by the Court, states: "The complaints correctly set forth the facts in each case as to each defendant. There are no disputed issues of fact."

The admission that there are no issues of fact also appears in several places in the pleadings, including each of the motions for summary judgment, and also in the oral arguments on the motions.

The Estes are residents of this judicial district. All requirements under 26 U.S.C. §§ 7401 and 7403 for the bringing of this character of action have been met. The Court has jurisdiction of the subject matter. 28 U.S.C. § 1340, and 26 U.S.C. § 7402(a).

The claims for delinquent taxes grew out of the failure of Billie Sol Estes to report and pay taxes on the receipt of many millions of dollars garnered by him during the years in question in his operation of a notorious, mammoth, far-reaching swindle.[2] On April 7, 1962, shortly after the operation collapsed, he filed in the Pecos Division of the United States District Court for the Western District of Texas a petition for arrangement under Chapter XI of the Bankruptcy Act.[3] He was adjudicated a bankrupt in that proceeding on July 13, 1962. A final order of the Bankruptcy closing the proceeding was entered on December 5, 1969; but Billie Sol Estes was denied a discharge in bankruptcy.

After the adjudication that Billie Sol Estes was a bankrupt, the assessments here involved were made against him for a total of $21,094,955.33, plus accrued interest as provided by law. The dates of the assessments, notices and demands for the various years were: for 1959 and 1960—October 17, 1963; for 1961—August 9, 1963; and for 1962—January 23, 1967.

Under the circumstances, the income tax liabilities included in these assessments had to be litigated in the pending bankruptcy proceeding. 26 U.S.C. § 6871(b).[4] Proofs of claim based upon each of the assessments were filed there. Objections to the tax liabilities and tax assessments for the years 1959, 1960 and 1961 were filed by the Trustee in the bankruptcy proceeding and by Billie Sol Estes.[5] They claimed that the money Billie Sol bilked from his victims represented loans from them to him, rather than income. The referee in Bankruptcy disallowed the proofs of claim for the three years set out above. On a hearing on Petition for Review filed by the Government, the United States District Court set aside the order of the Referee, and allowed the proofs of claim. The Court of Appeals upheld the District Court's judgment to the extent that the claims are sued upon in the present action. *Moore, Trustee v. United States,* 5 Cir., supra, footnote 2.

2. The details of the fraudulent scheme and of many background facts leading up to the tax assessments here involved appear in U. S. District Judge Ernest Guinn's Findings of Fact and Conclusions of Law filed in connection with a hearing on a Petition for Review in Cause No. 299, in Bankruptcy, *In the Matter of Billie Sol Estes, Bankrupt,* in the United States District Court for the Western District of Texas, Pecos Division. That is one of the documents made a part of the record for consideration on the motions for summary judgment. It was marked for identification as Government's Exhibit "1" in the hearing on the motions.

Factual summaries of the scheme also appear in the opinions in—

*Estes v. United States,* 5 Cir., 335 F.2d 609 (1964), cert. den. 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559, on affirmance of Estes' conviction on several offenses growing out of such scheme.

*Estes v. United States,* W.D.Tex., 254 F.Supp. 314 (1966), on denial of post-conviction motion to set aside convictions and sentence above described.

*Moore, Trustee v. United States,* 5 Cir., 412 F.2d 974 (1969), on affirmance of judgment adjudicating Billie Sol Estes' tax liabilities for the years 1959, 1960 and 1961, on the basis of proofs of claim in the bankruptcy proceeding.

3. This is the matter described in footnote 2 above.

4. 26 U.S.C. § 6871(b) provides:

"Claim filed despite pendency of Tax Court proceedings—In the case of a tax imposed by subtitle A or B claims for the deficiency and such interest, additional amounts, and additions to the tax may be presented, for adjudication in accordance with law, to the court before which the bankruptcy or receivership proceeding is pending, despite the pendency of proceedings for the redetermination of the deficiency in pursuance of a petition to the Tax Court; but no petition for any such redetermination shall be filed with the Tax Court after the adjudication of bankruptcy, the filing or (where approval is required by the Bankruptcy Act) the approval of a petition of, or the approval of a petition against, any taxpayer in any other bankruptcy proceeding, or the appointment of the receiver."

5. The proof of claim for the taxes, penalties and interest included in the assessment for 1962 was filed a good while after the ones for the three prior years. No objection was made to it, and it was allowed by operation of law.

Patsy D. Estes was not a party in any bankruptcy proceeding, so the procedure in regard to the litigation of her tax liabilities was different. Assessments totalling $24,558,024.90 were made against her for income taxes, penalties and interest for the years 1959, 1960, 1961 and 1962.[6] After notices of the assessments and demands for payment thereof were served upon her, she filed petitions with the Tax Court of the United States, pursuant to Section 6213 of the Internal Revenue Code of 1954, as amended, seeking a redetermination of the tax liabilities asserted in the notices of deficiency. The Tax Court proceedings resulted in a decision on January 23, 1970 determining that she was liable for the taxes, penalties and interest listed in the assessments, plus accrued interest as provided by law. That decision became final on April 23, 1970.

Each of the assessments against Billie Sol Estes and Patsy D. Estes included a 50% fraud penalty.

The Government was not claiming the total of the two amounts assessed against the taxpayers, as their income tax liabilities for the years 1959–1962, both inclusive, were joint. The pendency of the bankruptcy proceedings made it necessary to litigate the tax liabilities of the husband and wife separately in different forums. In his oral argument on the motions, counsel for the Government gave the following explanation for what he said were the apparent differences in the total amounts of the liabilities determined in the Bankruptcy Court and the Tax Court:

"MR. McCARTHY: Your Honor, basically we have the joint income tax liabilities of Billie Sol Estes, and his wife, Patsy Estes, for the year 1959, through 1962, which are the subject of both of these cases. They are joint liabilities, but they were litigated originally in different forums.

"Since they were litigated in different forums, they were assessed by the Revenue Service under different Revenue statutes, and were litigated at different times, so the liabilities appear to be in different amounts, and that is because of the way interest accrued on tax rates, and on other elements of the liabilities. But, they are joint liabilities."

The Government says that each of the following theories authorizes the entry of the judgment now sought by it:

1. There is both statutory and common law authority to maintain a suit on the liabilities evidenced by the tax assessments.

2. An action in debt on the basis of the existing judgments is authorized by common law.

The defendants contend that:[7]

1. Authority for the Government to recover judgment for income taxes assessed must be derived from a statute. 26 U.S.C. § 7403, relied upon by the Government, is not applicable to this type of action, because it authorizes only a suit to enforce a lien on some specific property of the taxpayer.

2. The tax liabilities of each of the defendants under the respective assessments against them were adjudicated in the Bankruptcy Court (Billie Sol Estes matter) and the Tax Court (Patsy D. Estes case). The pertinent judgments of those tribunals have long since become final, and are *res judicata* of the tax liabilities determined by them. They are therefore a bar to any further legal action on their underlying indebtednesses.

3. While courts have the authority to render judgment on the basis of an existing judgment, it is limited to those cases where it is necessary to expand the "geographical coverage" of the judgment sued upon. That necessity does not exist here.

4. This action is being maintained to make life more difficult for Billie Sol Estes while he is on parole on his fifteen year sentence for various offenses arising out of his fraudulent scheme heretofore men-

6. A jeopardy assessment for 1961 was also filed.

7. The defendants' contentions are taken from their pleadings and briefs and the oral arguments of their counsel.

tioned.[8] This point is too frivolous to require discussion.

The defendants argue that since the Government is not entitled to recover on any theory presented by the pleadings they are each entitled to summary judgment.

The Court is of the opinion that the Government is entitled to summary judgment based on the judgments of the Tax Court and of the Bankruptcy Court.

▮ The Court agrees with the Government that as a general proposition an action to recover personal judgment against a taxpayer on the basis of a tax liability evidenced by an assessment against him is authorized both by statute (26 U.S.C. § 7402(a),[9] and by common law (*Damsky v. Zavatt,* 2 Cir., 289 F.2d 46 (1961). That rule would be applicable to this case now if the tax liabilities under the assessments had not already been litigated in the Bankruptcy and the Tax Courts. The determinations of those tribunals are *res judicata* of all issues that were or could have been litigated in those actions.[10] While the parties agree that those judgments are *res judicata,*[11]

---

**8.** The following occurred during the oral argument of counsel for the defendants on the motions:

"THE COURT: Well, anyway, I take it that you are not too serious about your argument that the Government is just trying to bring this proceeding solely for the purpose of harassing the taxpayer?

"MR. BRYANT: I do not take the position that it is solely for that purpose.

"THE COURT: Well, do you think that that has anything to do with it?

"MR. BRYANT: I think the Government would love very much to—It would be a great contributing cause for the Government, at this late date, to find something that belongs to Mr. Estes, and to find some way to get to it.

"THE COURT: Well, that wouldn't be harassment, legally, would it?

"MR. BRYANT: That would depend on a legal definition of harassment. Perhaps that word is a little bit blunt. Perhaps the word 'bother' would maybe fit a little bit better."

**9.** 26 U.S.C. § 7402(a):

"The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of *ne exeat republica,* orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws."

**10.** Final Judgments of Tax Court are *res judicata* : *International Building Co. v. U. S.,* 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953); *Commissioner v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Boschma v. Cordoza,* 6 Cir., 460 F.2d 304 (1972); *United States v. Bottenfield,* 3 Cir., 442 F.2d 1007 (1971).

Similarly, final orders of the Bankruptcy Court are *res judicata* of the matters involved. *Katchen v. Landry,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). These cases hold that a bankruptcy court's ruling disposing of a proof of claim on its merits is a final judgment which will support a plea of *res judicata.*

**11.** Paragraph IX. of the Government's amended complaint alleges:

"The income tax liabilities asserted in the assessments described in Paragraph VII above were the subject of Tax Court proceedings which resulted in the Tax Court decision dated January 23, 1970, described in Paragraph V above, whereby these tax liabilities of Patsy D. Estes were determined and adjudged to be in the amounts of the assessments against Patsy D. Estes for the years 1959 through 1962, inclusive, as described in Paragraph VII above, and whereby these tax liabilities and assessments became *res judicata* ; . . . "

Paragraph VI. alleges:

" . . . By virtue of the said allowances of the proofs of claim for tax assessments for the years 1959 through 1962 in the bankruptcy proceeding of Billie Sol Estes, said proofs of claim, and tax assessments contained therein, became the subjects of final determinations against Billie Sol Estes by the United States District Court for the Western District of Texas and are *res judicata* . . . ."

On page 2 of their brief, entitled, "Memorandum of Authorities", the defendants say:

" . . . We have previously cited authority and believe it is well accepted by the Plaintiff that, as to the existence of the tax liability, the holdings in the Bankruptcy Court and the Tax Court are res judicata. Therefore, a determination of the existence of the liability in this case is improper . . ."

there is a difference between them as to the effect of the application of the rule. The plaintiff takes the position that *res judicata* forecloses any contest of the tax liabilities involved in the assessments, but does not bar an action of this kind. The defendants agree that they have no right to contest such tax liabilities, but say that the Government already has final judgments on such liabilities which are a bar to any further action on them.

■ The Court is of the opinion that the judgments of the Bankruptcy Court and the Tax Court bar any further litigation based on the causes of action there involved. If that were not so, *res judicata* would be meaningless in this case. "*Res judicata*" means that "a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit on the same cause of action." *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122, 1126 (1955). If recovery were allowed here on the basis of the tax liabilities involved in the assessments in question, there would be two judgments on the merits of the same causes of action. *Res judicata* does not permit that.

■ The Government, may, however, recover a personal judgment against each of the defendants as prayed for on the basis of the judgments of the Bankruptcy and the Tax Courts. That is a cause of action independent of the ones involved in the Bankruptcy and the Tax Courts. "A judgment creates a new right in the judgment plaintiff and imposes a new duty on the defendant, independent of the cause of action alleged in the suit in which the judgment was given. Suit on a judgment is a suit on this new right, not an old cause of action, and it is immaterial whether a cause of action did or did not exist before judgment." *McDougal v. McDougal*, Mo.App., 279 S.W.2d 731.

See also *Gibson v. Epps*, Mo.App., 352 S.W.2d 45, 49. The right to bring an action in debt upon an existing judgment of another court has been consistently recognized since early common law.[12] The authorities are divided on the question of the right to bring such an action without showing that the second judgment will give the plaintiff a better remedy for the enforcement of his right than he had under the judgment sued upon. 50 C.J.S. Judgments at p. 422, says that "the weight of authority is to the effect that no reason for bringing the suit, other than that the judgment remains unpaid, need be alleged." The only limitation is that the judgment creditor "can collect but once". *Juneau Spruce Corp. v. International Longshoremen's & Warehousemen's Union*, D.C.Hawaii, 128 F.Supp. 697, 700. "The following quotation from *Stevens v. Stone*, 94 Tex. 415, 60 S.W. 959, gives the minority view:

"  .   .   .   Where no advantage can accrue to a plaintiff in a judgment by a second suit upon it, we fail to see that there is any propriety in allowing such suit. It is a narrow view of the subject, as we think, to say that the judgment is an evidence of debt, and that a debt will support a cause of action. The purpose of judicial actions is to afford remedies for the enforcement of rights, and, where the result of a suit prosecuted to success is to give the plaintiff no better remedy for the enforcement of his right than he had before, no reason other than a technical one can exist for permitting its prosecution.   .   .   . "

"  .   .   .   Therefore we are inclined to hold with the intimation of this court in former cases   .   .   . that a judgment creditor cannot maintain an action upon his judgment without showing some advantage to be gained thereby. But, however that may be, we are clearly of

---

12. "At common law and generally, except in so far as the right has been restricted by local statutes, as discussed infra §§ 852, 853, a judgment for a sum certain in money is a debt of record, and as such may be made the foundation of a new action   .   .   ." 50 C.J.S. Judgments p. 421.

"At common law a judgment has always been regarded as a cause of action on which a right to bring suit exists, and such is the rule nearly everywhere recognized as sound law today in the absence of statutes to the contrary (15 RCL 898)   .   .   .." *Lindsay Great Falls Co. v. McKinney Motor Co.*, 79 Mont. 136, 255 P. 25.

the opinion that, where it is made to appear that a second judgment may be in any respect more favorable than the first, the action should be allowed. . . . "

See *Hatfield v. U.S.*, 78 Ct.Cl. 419; *Reid v. Bristol*, 241 N.C. 699, 86 S.E.2d 417; *Pitchford v. Blanchard*, Okl., 503 P.2d 1270; *Board of Education of City of Drumright v. Board of Com'rs. of Creek County*, 171 Okl. 464,, 43 P.2d 139;[13] *Shepherd v. Bridenstine*, 80 Iowa 225, 45 N.W. 746.[14]

While the rule that a judgment creditor may maintain an action on his existing judgment has been recognized in the federal courts,[15] there has been no indication as to whether they will require a showing by the plaintiff that he will gain a legitimate advantage by the second judgment which he did not have under the first one. It makes no difference in the present case, however, whether such showing is or is not required, because legitimate advantages in securing a second judgment exist.

In the complaint as amended (paragraphs IV. and XI.), the government sets out that the statute of limitations can be tolled under a judgment of a United States District Court, whereas nothing can be done about limitations under the judgments of the Bankruptcy and the Tax Courts. Also, it says that such judgments do not "entitle this plaintiff to have a United States Marshal levy on property of the debtor pursuant to a writ of execution as do final judgments issued by the United States District Courts."

The defendants do not agree with the last reason,[16] but they do concede that the Government is correct in its position about having to have a personal judgment of a United States District Court to enable it to toll the statute of limitations.[17]

The defendants' argument that the Government has adequate powers under the Internal Revenue Code to collect taxes due it would not be ground for denying it additional powers flowing from a judgment of a United States District Court. The Government is not put to a choice of alternates. It is entitled to take advantage of all available legal remedies.

The fact that the statute of limitations could be tolled under a judgment of a United States District Court, and that there would be no way to toll it under the judgments of the Bankruptcy and the Tax Courts is sufficient in itself to satisfy the requirement that there be a showing of legitimate advantage in having a judgment upon the former judgments. The following is quoted from 50 C.J.S. Judgments p. 422, footnote 7:

"Fact that judgment is about to become barred by limitations is good ground for permitting judgment creditor to bring action on judgment. *Excelsior*

---

**13.** The *Drumright* case points out that some of the problems inherent in allowing a judgment creditor to maintain an action on his judgment as often as he chooses, without showing any legitimate advantage, are useless and vexatious legislation, useless imposition of additional court costs and legal expenses upon the judgment debtor, and useless congestion of already crowded court dockets.

**14.** The following is quoted from the *Shepherd* case:

"The law does not favor unnecessary actions. We are of the opinion that plaintiff is not entitled to maintain an action which, if successful, would result in a personal judgment against the defendant of no more binding force than the one he already has."

**15.** *Rosch v. Kelley*, 5 Cir., 527 F.2d 871 (1976); *Indemnity Ins. Co. of North America v. Smoot*, 80 U.S.App.D.C. 287, 152 F.2d 667 (1946); *Juneau Spruce Corp. v. International Longshoremen's & Warehousemen's Union*, supra.

**16.** The following is quoted from the oral argument of counsel for the defendants on the motions:

"First, we feel that Mr. McCarthy is in error in his statement that the Government could not satisfy its claims in the present state of the record. There are, and I am sure the Court is aware, ample lien provisions, seizure provisions, sale provisions, and mechanics within the Internal Revenue laws of this country that allow the seizing and sale of any property belonging to a taxpayer, even without judicial decree."

**17.** Counsel for the defendants made the following statement in his oral argument on the motions:

"And frankly, we view these cases as an attempt by the Government to deprive Mr. and Mrs. Estes of the benefits of the limitations statute contained in the Internal Revenue laws of this country.

"We believe that this is the major thing, plus the fact that Mr. Estes is a parolee. . . . "

*Steel Furnace Co. v. Smith*, Mo.App., 17 S.W.2d 378."

See also *First Nat. Bk. of Milwaukee v. Rische*, 15 Wis.2d 564, 113 N.W.2d 416; *Meier v. Purdun*, 70 Wis.2d 1100, 236 N.W.2d 262.

Either or both of the legitimate advantages pointed out by the Government in paragraphs IV. and IX. of its amended complaint is adequate to justify a suit on the judgments of the Bankruptcy and the Tax Courts.

Summary judgment will be entered for the Government for the amounts adjudged by the Bankruptcy and the Tax Courts on the assessments here involved. In order to avoid any misunderstanding in the future, the judgment will contain adequate provisions to show that the income tax liabilities here involved are joint liabilities of the defendants, and that while this judgment is being entered upon prior judgments, the Government can collect its debt only once.